## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **POURYA SHAHMALEKI,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **Case No. 15-7766-JAR** |
| | ) | |
| | ) | |
| **KANSAS STATE UNIVERSITY** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Plaintiff Pourya Shahmaleki brought this lawsuit against Defendant Kansas State University ("KSU") pursuant to 42 U.S.C. § 1983 alleging violations of his due process and equal protection rights under the Fourteenth Amendment to the United States Constitution. This matter comes before the Court on Defendant's Motion to Dismiss (Doc. 5) and Plaintiff's Motion for Leave to Amend his Complaint (Doc. 22).[1] Plaintiff's proposed Second Amended Complaint asserts his Fourteenth Amendment claims without reference to Section 1983, and also asserts discrimination and retaliation claims under Title VI of the Civil Rights Acts of 1964, 42 U.S.C. § 2000d. The matter is fully briefed and the Court is prepared to rule. For the reasons stated below, the Court grants Defendant's motion to dismiss, with prejudice, and denies Plaintiff's Second Motion to Amend his Complaint, without prejudice, with leave to amend his Complaint as to his proposed Title VI claims.

---

[1] Plaintiff filed his first Motion to Amend his Complaint (Doc. 13) with a proposed First Amended Complaint (Doc. 13, ex. A). Plaintiff has informed Defendant that he intends to proceed under his proposed Second Amended Complaint. Doc. 26 at 1. Therefore, the Court finds that Plaintiff's first Motion to Amend is moot.

## I.        Rule 12(b)(6) Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[2]  "[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[3]  The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[4]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[5]  Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[6]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[7]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[8]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an

---

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[3] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[6] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[7] *Id.*

[8] *Id.* at 679.

entitlement to relief."[9]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10]

## II.    Factual Allegations

The following factual allegations are drawn from Plaintiff's original Complaint and proposed Second Amended Complaint, and are assumed true for purposes of this ruling. Plaintiff is a male citizen of Iran, and was a graduate student and employee at KSU from August 2011 until May 1, 2013.  During the 2011–2012 school years, Plaintiff excelled in his classes and had no issues regarding his status as a student or as an employee of KSU.  On May 1, 2013, Plaintiff was required to attend a meeting where he was informed that he was being charged with multiple violations of KSU's Threat Management Policy.  The charges were based on six incidents that Plaintiff alleges were untrue.  First, one of Plaintiff's professors told her supervisor that Plaintiff's actions were "threatening" when he asked about her decision to require him to enroll in a class.  Second, Plaintiff was charged with failing to enroll in the class.  However, Plaintiff did enroll in the class and received an "A" grade.  Third, employees in the International Student Scholar Services department felt "uncomfortable" when Plaintiff visited the department to discuss his health insurance.  Plaintiff's inquiries during this visit were reasonable and nonthreatening.

The fourth charge related to an incident that occurred two years before the May 1, 2013 meeting.  KSU claimed that, based on a police report, Plaintiff was involved in a physical altercation with another graduate student.  However, Plaintiff was never involved in a physical

---

[9] *Id.*

[10] *Id.* at 678.

altercation, and no police report reflected such an altercation.  Fifth, KSU asserted that Plaintiff's professors had reported that they did not want to work with him because he was "uncooperative and demanding."  Plaintiff alleges that his Professors did not state such a concern.  Finally, KSU claimed that staff members were "intimidated" by Plaintiff when he was attempting to secure housing for the following school year.  Although Plaintiff may have been insistent, he did not make threats of physical violence toward the staff members.

At the conclusion of the meeting, Plaintiff was given a letter that had been typed before the meeting.  The letter stated that Plaintiff was expelled from KSU, that he was not allowed to have further contact with KSU professors, instructors, or staff members, and that he was placed on the "not allowed to reenroll list."  Further, Plaintiff was instructed that he would be escorted from the meeting to remove his belongings from his office and from his apartment by 6:00 p.m. that day.  KSU also terminated Plaintiff's student visa that day.  Plaintiff was not given an opportunity to rebut the allegations during the meeting.  Although Plaintiff requested an appeal of the decision, he was informed that no appeal procedures were available under KSU's policy. However, KSU allowed students who were not Iranian to appeal charges of misconduct.

Plaintiff subsequently filed claims with the Office of Civil Rights (OCR) related to the events leading to his expulsion.   KSU reached a partial resolution of one of the claims with the OCR.  Pursuant to this resolution, Plaintiff's expulsion was removed from his transcript, and his status was listed as "eligible to enroll."  In September 2014, Plaintiff reapplied for admission at KSU but was denied.

III.     **Discussion**

   A.     **Due Process and Equal Protection Claims**

   Plaintiff, in his original Complaint, brings Section 1983 claims against Defendant based on violations of his substantive due process, procedural due process, and equal protection rights under the Fourteenth Amendment.  Plaintiff seeks monetary and equitable relief based on these claims.  Defendant seeks dismissal on the basis of sovereign immunity.[11]  It is well settled that sovereign immunity precludes a plaintiff from maintaining a Section 1983 suit against a state or a state entity.[12]  KSU, as a state university, is an arm of the State of Kansas that is immune from suit without a clear consent by the state.[13]  As there is no showing that the State of Kansas has consented to suit, Plaintiff may not maintain his claims against Defendant on a Section 1983 theory.  Therefore, the Court dismisses Plaintiff's Complaint on the basis of sovereign immunity.

   Further, the Court finds that Plaintiff's proposed amendments to his due process and equal protection claims would be futile.  Federal Rule of Civil Procedure 15(a)(2) directs courts to "freely give leave" to amend "when justice so requires."[14]  However, a court may deny leave to amend based on futility when the complaint, as amended, would be subject to dismissal.[15]  Thus, to determine whether a proposed amendment would be futile, courts analyze the proposed

---

[11] Doc. 6.

[12] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.").

[13] *Brennan v. Univ. of Kan.*, 451 F.2d 1287, 1290–91 (10th Cir. 1971) (holding that the University of Kansas, as an arm of the state, was immune from suit by virtue of the Eleventh Amendment).

[14] Fed. R. Civ. P. 15(a)(2).

[15] *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848 (10th Cir. 1999) (citing *TV Commc'ns Network, Inc., v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992)).

amendment under the standard for a motion to dismiss.[16]  In his proposed First and Second Amended Complaints, Plaintiff abandons the Section 1983 theory and instead brings due process and equal protection claims directly under the Fourteenth Amendment.[17]  Congress' enforcement power under Section 5 of the Fourteenth Amendment "includes the power to abrogate state sovereign immunity by authorizing private suits for damages against the States."[18]  The Fourteenth Amendment does not, however, create a private remedy absent Congressional action.[19]  Sovereign immunity precludes Plaintiff's claims whether they are brought under Section 1983 or directly under the Fourteenth Amendment.[20]  Thus, the Court finds that Plaintiff's proposed amendments to his due process and equal protection claims would be futile.

### B.      Title VI Discrimination Claims

Plaintiff also seeks to amend his Complaint by adding claims of education and employment discrimination under Title VI.  Title VI provides in part that "no person . . . shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[21]  Courts often use the Title VII proof scheme to analyze Title VI

---

[16] *Dockery v. Unified Sch. Dist. No. 231*, 406 F. Supp. 2d 1219, 1224 (D. Kan. 2006).

[17] Doc. 12 at 3; Doc. 22, Ex. A.

[18] *United States v. Georgia*, 546 U.S. 151, 158–59 (2006).

[19] *Vakas v. Rodriquez*, 728 F.2d 1293, 1296 (10th Cir. 1984) ("Where, as here, the Congress has chosen not to enact an enforcement scheme *directly* addressing the appellant's situation, the state retains its sovereign immunity.").

[20] *Id.* (affirming dismissal of Section 1983 and Fourteenth Amendment claims based on sovereign immunity); *see Will*, 491 U.S. at 66 (holding that sovereign immunity bars suits against states unless the State has waived its immunity or Congress "has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity").

[21] 42 U.S.C. § 2000d.

discrimination claims.[22]  Where, as here, a plaintiff seeks to prove discrimination through indirect evidence, courts apply the familiar *McDonnell Douglas* burden shifting framework.[23] Under this framework, a plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence.[24]  Establishing a prima facie case raises a rebuttable presumption that the defendant unlawfully discriminated against the plaintiff, and the defendant must then articulate a legitimate, nondiscriminatory reason for the adverse employment action.[25]  If the defendant does so, the burden shifts back to the plaintiff to prove that the articulated reason was pretext for discrimination.[26]

   At the pleading stage, a plaintiff is not required to have "adequately alleged a prima facie case" or "circumstances that support an inference of discrimination."[27]  Instead, a plaintiff need only "set forth plausible claims."[28]  Because *McDonnell Douglas* is an evidentiary rather than a pleading standard, a plaintiff need not satisfy the elements of the framework to survive a motion to dismiss.[29]  However, assessing the elements of the *McDonnell Douglas* framework is helpful in determining whether a plaintiff has set forth plausible claims.[30]

---

[22] *Bryant v. Indep. Sch. Dist. No. I-38 of Garvin Cnty., Okla.*, 334 F.3d 928, 930 (10th Cir. 2003) (citing *Guardians Ass'n v. Civil Serv. Comm'n of N.Y.*, 463 U.S. 582 (1983)).

[23] *Perry v. Woodward*, 199 F.3d 1126, 1134 (10th Cir. 1999) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)).

[24] *Id.* at 1135.

[25] *Id.*

[26] *Id.*

[27] *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 509 (2002).

[28] *Khalik v. United Air Lines*, 671 F.3d 1188, 1194 (10th Cir. 2012).

[29] *Swierkiewicz*, 534 U.S. at 510–11.

[30] *See Khalik*, 671 F.3d at 1192 (stating that "the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim").

In *Khalik v. United Air Lines*, the Tenth Circuit applied the plausibility standard to a Title VII pregnancy discrimination claim and a Family and Medical Leave Act retaliation claim.[31] Applying this standard, the court found that the plaintiff's "general assertions of discrimination and retaliation, without any details whatsoever of events leading up to her termination, are insufficient to survive a motion to dismiss."[32]  The court discussed how the plaintiff could have met the pleading requirements for her claims:

> Plaintiff should know when she requested FMLA leave and for what purpose. She should know who she requested leave from and who denied her.  She should know generally when she complained about not receiving leave and when she was terminated.  She should know details about how Defendant treated her compared to other non-Arabic or non-Muslim employees.  She should know the reasons Defendant gave her for termination and why in her belief those reasons were pretextual.  She should know who grabbed her by the arm, what the context for that action was, and when it occurred.  She should know why she believed that action was connected with discriminatory animus. She should know who she complained to about the discrimination, when she complained, and what the response was. She should know who criticized her work, what that criticism was, and how she responded. But in fact, Plaintiff offers none of this detail . . . Without more, her claims are not plausible under the *Twombly*/*Iqbal* standard.[33]

Here, Plaintiff makes several conclusory statements in support of his discrimination claims, including that certain faculty and staff members at KSU viewed his nationality as something negative, that Defendant's stated reasons for his expulsion were pretextual, and that Defendant's actions in expelling him were discriminatory.  These conclusory statements are not entitled to the assumption of truth.[34]

---

[31] *Id.* at 1190–94.

[32] *Id.* at 1193.

[33] *Id.* at 1194.

[34] *Id.* at 1193 ("In this case, several of Plaintiff's allegations are not entitled to the assumption of truth because they are entirely conclusory").

The Court finds the remaining factual allegations are insufficient to give rise to plausible Title VI discrimination claims.  Although Plaintiff alleges that each of Defendant's stated reasons for his expulsion were false, this is not enough to support a claim of discrimination without alleging that Defendant acted in bad faith in coming to these reasons.[35] Additionally, Plaintiff does not allege that the non-Iranian students who were afforded appeals were similarly situated to him, or provide any details as to who these students were.[36]  Plaintiff also asserts that KSU had procedures in place for disciplinary hearings but failed to use these procedures in his expulsion hearing.  Plaintiff provides no details as to what these procedures were or how they would apply to him.  Finally, Plaintiff alleges that Defendant prepared the expulsion letter before the hearing and did not allow him to respond at the hearing.  However, Plaintiff does not claim that this violated any KSU policy or allege that this constituted any difference in treatment with respect to similarly situated students.

Plaintiff need not provide specific facts as to all the details listed above, but he should be able to provide some context for his allegations.[37]  Without more, these allegations and the conclusory statements that Plaintiff offers in support of his claims do not survive the *Twombly/Iqbal* standard.  Therefore, Plaintiff's proposed Second Amended Complaint to add Title VI discrimination claims would be futile.  Given the nature of these factual deficiencies,

---

[35] *See Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010) ("To support an inference of pretext, to suggest that something more nefarious might be at play, a plaintiff must produce evidence that the employer did more than get it wrong."); *Young v. Dillon Cos.*, 468 F.3d 1243, 1251 (10th Cir. 2006) (describing case in which court did not find pretext because there was no suggestion that the employment decision was made in bad faith).

[36] *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000) (stating that a plaintiff in a Title VII case may show pretext by alleging that he was treated differently from similarly situated, non-protected employees).

[37] *See Khalik*, 671 F.3d at 1194 ("While we do not mandate the pleading of any specific facts in particular, there are certain details the Plaintiff should know and could properly plead to satisfy the plausibility requirement").

however, the Court grants Plaintiff leave to amend his Complaint a third time to conform his

Title VI discrimination claims to the *Twombly*/*Iqbal* pleading standard.

### C.    Title VI Retaliation Claim

Plaintiff also seeks to amend his Complaint to add a Title VI retaliation claim.  A

plaintiff can establish retaliation through direct evidence that retaliation played a motivating

part in the adverse action, or through indirect evidence of retaliation under the *McDonnell*

*Douglas* framework.[38]  To establish a prima facie case of retaliation under Title VI, a plaintiff

must show (1) that he engaged in protected activity under Title VI; (2) that he suffered adverse

action contemporaneous with or subsequent to such activity; (3) a causal nexus between the

protected activity and the adverse action; and (4) the school knew of the retaliation and did not

adequately respond.[39]

In support of his retaliation claim, Plaintiff alleges that he engaged in protected activity

by complaining to the OCR concerning his expulsion, and that he was denied the ability to

reenroll at KSU in September 2014.[40]  Plaintiff does not provide any details as to when he

complained to the OCR, how the OCR responded, or whether there was any temporal or other

causal nexus between his complaint and denial of his reenrollment.  Although Plaintiff is not

required to allege a prima facie case at the pleading stage, he is required to allege some facts to

"give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."[41]

Like the plaintiff in *Khalik*, Plaintiff has failed to provide more than "general assertions" of

---

[38] *Id.* at 1192; *Rubio v. Turner Unified Sch. Dist. No. 202*, 523 F.Supp. 2d 1242, 1253 (D. Kan. 2007) (describing elements of a Title VI retaliation claim).

[39] *Rubio*, 523 F. Supp. 2d at 1253 (citing *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)).

[40] Doc. 22, Ex. A at 9–10.

[41] *Khalik*, 671 F.3d at 1192 (quoting *Erickson v. Pardus*, 551 U.S. 89 (2007)).

retaliation.[42]  Therefore, the Court finds that the Title VI retaliation claim in Plaintiff's

proposed Second Amended Complaint would be futile.  However, as with his Title VI

discrimination claims, the Court grants Plaintiff leave to amend his Complaint a third time to

address the factual deficiencies in his proposed Title VI retaliation claim.

## IV.   Conclusion

Based on the findings discussed above, the Court grants Defendant's motion to dismiss

Plaintiff's Complaint, with prejudice, on the basis of sovereign immunity.  Plaintiff may not

amend his Complaint with due process and equal protection claims,[43] as such amendments

would be futile.  Given the nature of the factual deficiencies in Plaintiff's proposed Title VI

claims,[44] however, the Court grants Plaintiff leave to file an amended complaint with these

claims, which should clearly and specifically remedy the issues addressed in this Order.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to

Dismiss (Doc. 5) is **granted**, with prejudice.

**IT IS FURTHER ORDERED BY THE COURT** that Plaintiff's Second Motion for

Leave to Amend (Doc. 22) is **denied**, without prejudice.  Plaintiff is granted leave to amend his

Complaint as to his proposed Title VI claims within twenty one (21) days of this Order.

**IT IS SO ORDERED.**

Dated: <u>November 23, 2015</u>

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[42] *Id.* at 1193.

[43] Counts four through seven of Plaintiff's proposed Second Amended Complaint.  Doc. 22, ex. A at 11–16.

[44] Counts one through three of Plaintiff's proposed Second Amended Complaint.  Doc. 22, ex. A at 6–10.