IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **POURYA SHAHMALEKI,**<br><br>　　**Plaintiff,**<br><br>　　v.<br><br>**KANSAS STATE UNIVERSITY,**<br><br>　　**Defendant.** | Case No. 15-7766-JAR |

## MEMORANDUM AND ORDER

On April 30, 2015, Plaintiff Pourya Shahmaleki brought this complaint against Defendant Kansas State University ("KSU"), alleging procedural and substantive due process violations under the Fourteenth Amendment to the United States Constitution (Doc. 1). On November 23, 2015, the Court granted Defendant's Motion to Dismiss (Doc. 5) with prejudice, and granted Plaintiff leave to amend his Complaint as to his proposed Title VI claims (Doc. 27). Plaintiff subsequently filed his Second Amended Complaint (Doc. 31), which alleges discrimination and retaliation claims under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. This matter comes before the Court on Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 34). The matter is fully briefed and the Court is prepared to rule. For the reasons stated below, the Court grants Defendant's motion to dismiss.

### I.   Factual Allegations

Drawing all reasonable inferences in favor of Plaintiff, the following facts are taken from Plaintiff's Second Amended Complaint. Plaintiff Pourya Shahmaleki, a citizen of Iran, worked as a graduate research assistant while attending graduate school at Defendant KSU from August 2011 until May 2013. On May 1, 2013, Plaintiff attended a meeting with Heather Reed, KSU

Senior Associate Dean, and Professor Donald Fenton, Mechanical Engineering Department Head, at Dean Reed's request. At the conclusion of the meeting, Defendant gave Plaintiff a letter imposing sanctions including expelling Plaintiff from graduate school, ending his employment, placing him on the "not allowed to enroll" list, notifying federal agencies of his expulsion and "advising him to have no further contact with professors, instructors or staff members." Based on previous conversations, Plaintiff alleges that Reed and Fenton harbored discriminatory animus based on Plaintiff's national origin. For example, Reed previously asked Plaintiff "why he 'didn't go back to Iran'" and "remarked that Plaintiff 'made my antenna go off.'" Similarly, Fenton previously "remarked that he would get Plaintiff 'a flight back to his country'" during a conversation about Plaintiff's research.

According to the expulsion letter, Defendant justified its decision with six specific charges. Defendant alleges that these charges constitute violations of its Threat Management Policy and Plaintiff alleges that they are categorically untrue.

The first charge arose from two interactions between Plaintiff and Associate Director of International Planning and Analysis Beverly Earles discussing the necessity of enrolling in a certain class. Director Earles characterized the interactions as "creepy and threatening." Director Earles also allegedly told Plaintiff "the culture here is different than in your country," and later stated that she was attempting to counsel Plaintiff on adapting to "American" conversations.

Second, Defendant charged that Plaintiff failed to follow Director Earles' instruction to enroll in a class, in which Plaintiff contends he actually received an "A" grade. The third incident involved Plaintiff's visit to the International Student Scholar Services Department, during which employees felt "uncomfortable." Fourth, Defendant charged that Plaintiff was

2

involved in a physical altercation with another graduate student two years earlier, after which a police report had been filed. However, Plaintiff alleges that the disagreement remained verbal and the police did not issue a report.

The fifth charge was that professors did not want to work with Plaintiff because he was "uncooperative and demanding," and he therefore did not have a required Major Professor. However, two professors and a research assistant gave Plaintiff positive reviews in the Office of Civil Rights ("OCR") investigation following Plaintiff's expulsion. Finally, Defendant charged that Plaintiff did not "cooperate" with staff while attempting to secure campus housing, and his actions caused staff to feel "intimidated." In each interaction, Plaintiff claims he actually did not engage in "threats, threatening behavior, acts of violence, or any related conduct" as required for the Threat Management Policy to apply.

Defendant did not present witnesses or documentation to support the claims, nor did the Threat Management Policy provide Plaintiff an opportunity to appeal the decision. However, Defendant charged "American Caucasian" students under the Graduate Student Rights and Grievance Procedure ("Graduate Procedure") or the Code of Conduct, which each provide a right to appeal. Defendant charged and expelled one "American Caucasian" student under the Threat Management Policy for a violent and egregious sexual assault.

Pursuant to a partial resolution with the OCR, Defendant removed the record of Plaintiff's expulsion from his transcript and returned his status to "eligible to reenroll." However, Defendant denied Plaintiff's reapplication in August 2014.

**II.     Rule 12(b)(6) Standard**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level"

3

and must contain "enough facts to state a claim to relief that is plausible on its face."[1]  "[T]he complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[2]  The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[3]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[4]  Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[5]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[6]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth or merely legal conclusions not entitled to an assumption of truth.[7]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[8]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9]

---

[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[2] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Kan. Penn Gaming, L.L.C. v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[5] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

## III.     Discussion

### A.     Title VI Discrimination Claim

Under Title VI, "no person . . . shall, on the ground of . . . national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[10] This provision reaches only intentional discrimination, and a plaintiff may satisfy the requirement by alleging direct or indirect discrimination.[11] A plaintiff can allege a claim of indirect discrimination pursuant to the familiar *McDonnell Douglas* burden-shifting framework.[12] Under this framework, the plaintiff has the initial burden to establish a prima facie case of discrimination.[13] To establish a prima facie case under Title VI, the plaintiff must prove: "(1) they are members of a protected class; (2) they suffered adverse action; and (3) they were treated less favorably than similarly situated students."[14] The defendant must then articulate a legitimate, nondiscriminatory reason for the adverse action, shifting the burden back to the plaintiff to prove that the articulated reason was pretext for discrimination.[15] Because *McDonnell Douglas* is an evidentiary rather than a pleading standard, a plaintiff is not required to have "adequately alleged a prima facie case" or "circumstances that support an inference of discrimination" to survive a motion to dismiss.[16]

---

[10] 42 U.S.C. § 2000d.

[11] *Alexander v. Sandoval*, 532 U.S. 275, 280–81 (2001) (quoting *Alexander v. Choate*, 469 U.S. 287, 293 (1985)).

[12] *Perry v. Woodward*, 199 F.3d 1126, 1134 (10th Cir. 1999) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)).

[13] *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007).

[14] *Silva v. St. Anne Catholic Sch.*, 595 F. Supp. 2d 1171, 1182 (D. Kan. 2009) (citing *EEOC v. BCI Coca–Cola Bottling Co.*, 450 F.3d 476, 483–84 (10th Cir. 2006) (Title VII)).

[15] *Id.*; *Perry*, 199 F.3d at 1134 (citing *McDonnel Douglas*, 411 U.S. at 802–04).

[16] *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 509–11 (2002).

However, assessing the elements of the *McDonnell Douglas* framework is helpful in determining whether a plaintiff has set forth plausible claims.[17]

In dismissing Plaintiff's original Complaint, the Court held that Plaintiff did not set forth a plausible claim of discrimination under Title VI on the basis of his national origin.[18] The Court identified four specific deficiencies in Plaintiff's Complaint.[19] First, Plaintiff failed to relate his situation to similarly situated students and therefore failed to plausibly allege disparate treatment. Second, Plaintiff failed to plead that KSU deviated from its standard procedures. Third, Plaintiff did not plausibly allege that Defendant relied in bad faith on false reasons for its expulsion and employment decision. Fourth Plaintiff did not provide sufficient context to support the allegation that decision-makers acted with discriminatory animus, thereby giving rise to an inference of discrimination.

In his Second Amended Complaint, Plaintiff attempts to establish a disparate treatment claim by alleging that he should have been subject to the Graduate Procedure or the Code of Conduct, rather than the Threat Management Policy. However, Plaintiff has not plausibly alleged that Caucasian American students subject to either the Graduate Procedure or the Code of Conduct were similarly situated. As the Tenth Circuit has explained,

> Factors to be considered when determining whether [individuals] are similarly situated include whether the [individuals] deal with the same supervisor, are subject to the same standards governing performance evaluation and discipline, engaged in similar violations of . . . policy, engaged in violations of comparable

---

[17] *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (stating that "the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim"); *Messina v. Kroblin Transp. Sys., Inc.*, 903 F.2d 1306, 1308 (10th Cir. 1990).

[18] Doc. 27.

[19] *Id.* at 9.

>seriousness, and whether there are any differentiating mitigating circumstances.[20]

Here, Plaintiff alleges that "[s]imilarly situated American Caucasian students with academic issues similar to those alleged against Plaintiff were resolved under the Graduate Procedure or Code of Conduct, as opposed to being resolved under the Threat Policy." However, Plaintiff does not support this conclusory statement with any factual allegations indicating that these students were subject to similar standards of discipline, supervised by common professors or academic departments, or faced charges similar to those against Plaintiff.[21]  Without more, Plaintiff has not plausibly alleged that he was similarly situated to the students disciplined under the Graduate Procedure or Code of Conduct.

Plaintiff also attempts to allege disparate treatment by describing the one Caucasian American student who was also charged under the Threat Management Policy.  Plaintiff appears to suggest that the student's sexual assault violation was more egregious than Plaintiff's conduct, and thus the Threat Management Policy should not govern Plaintiff's case.  Even if this student engaged in more severe conduct, there is no indication that Defendant could not use the Threat Management Policy for both the Caucasian American student and Plaintiff's charged conduct. Therefore, the Court finds that Plaintiff has not plausibly alleged a claim of disparate treatment.

Second, Plaintiff attempts to support his discrimination claim by alleging that Defendant deviated from its standard procedures by applying the Threat Management Policy and not providing Plaintiff an opportunity to appeal.  However, he does not allege any facts suggesting

---

[20]*Guinn v. Cessna Aircraft Co.*, No. 99-4140-DES, 2001 WL 743286, at *4 (D. Kan. June 29, 2001) (citing *Aramburu v. The Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997)); *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006).

[21]*See Buhendwa v. Univ. of Colo. at Boulder*, 214 F. App'x 823, 828 (10th Cir. 2007)  (affirming district court's grant of summary judgment on Title VI discrimination claim where plaintiff failed to present evidence that allegedly similarly situated students engaged in same conduct as plaintiff); *Jemaneh v. Univ. of Wyo.*, 82 F. Supp. 3d 1281, 1296–98 (D. Colo. 2015) (dismissing Title VI discrimination claim based in part on Plaintiff's failure to support claim with factual allegations showing that he was similarly situated to fellow students).

7

that the Threat Management Policy would not normally apply to a student facing charges similar to those alleged against Plaintiff. Plaintiff also partially quotes an email from Dean Reed in which she allegedly stated that Defendant used the Threat Policy so that Plaintiff "would have no appeal."[22] Although this email may indicate that Defendant was motivated to employ the Threat Management Policy in part to avoid an appeal, it does not alone provide a basis for an inference of discriminatory motive.[23] Here, Plaintiff has not alleged that applying the Threat Management Policy deviated from Defendant's normal procedures under these circumstances. Thus, Plaintiff has not plausibly alleged that Defendant deviated from its standard procedures in his case.

Third, Plaintiff alleges that Defendant relied on false statements in coming to its decision. As the Court explained in its previous order, alleging that the reasons for his expulsion turned out to be false "is not enough to support a claim of discrimination without alleging that Defendant acted in bad faith in coming to these reasons."[24] As with his First Amended Complaint, Plaintiff here does not allege that Defendant knew that the statements in support of the charges were false, or that Defendant otherwise acted in bad faith in coming to its decision. Thus, the Court finds that these allegations do not support a plausible discrimination claim.

Finally, Plaintiff alleges in his Complaint that various comments made by Dean Reed, Professor Fenton and Associate Director Earles establish a discriminatory motive on the part of Defendant. Absent a nexus between comments implicating a plaintiff's national origin and

---

[22] Doc. 31 at 15 ¶ 70.

[23] *See Randle v. City of Aurora*, 69 F.3d 441, 454 (10th Cir. 1995) ("The mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent") (citing *Ingels v. Thiokol Corp.*, 42 F.3d 616, 623 (10th Cir. 1994)).

[24] Doc. 27 at 9 (citing *Johnson v. Weld Cnty., Colo*, 594 F.3d 1202, 1211 (10th Cir. 2010); *Young v. Dillon Cos.*, 468 F.3d 1243, 1251 (10th Cir. 2006)).

discriminatory action, such comments alone do not raise an inference of discriminatory animus.[25] Comments made by decision-makers that are related to the decisional process establish such a nexus.[26] Comments made by non-decision-makers, as well as "stray remarks" not connected to the adverse action, generally do not support an inference of discriminatory animus.[27]

Plaintiff alleges that Professor Fenton made a comment to Plaintiff about getting him a "flight back to his country." Plaintiff alleges that Fenton took part in the termination meeting, but does not allege that he was a decision-maker.[28] His presence at the meeting does not alone establish his central role in the decision. Even if Plaintiff had properly alleged that Professor Fenton took part in the expulsion and termination decision, Plaintiff provides no factual context indicating that this comment was allegedly connected to the decision. Thus, Professor Fenton's alleged remarks do not give rise to a claim of discrimination.

Plaintiff does allege that Dean Reed was a central decision-maker, that she took part in the May 1, 2013, meeting, and that she signed the termination letter. However, Dean Reed's April 2013 comment that Plaintiff "made my antenna go off" is not discriminatory on its face, especially given the charges that Plaintiff faced involving allegedly intimidating conduct. Plaintiff does not allege facts indicating that this comment implicated Plaintiff's national origin, as opposed to the conduct with which Plaintiff was charged. Her other comment, asking Plaintiff why he "didn't go back to Iran" is also unaccompanied by factual allegations indicating context, and Plaintiff's Complaint is unclear about when this comment occurred in relation to the

---

[25] *Rea v. Martin Marietta Corp.*, 29 F.3d 1450 (10th Cir. 1994); *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526 (10th Cir. 1994).

[26] *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989); *Cone*, 14 F.3d at 531; *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125 (10th Cir. 1998) (age discrimination).

[27] *Price Waterhouse*, 490 U.S. at 277; *McKnight*, 149 F.3d at 1129.

[28] Plaintiff asserts in his response that Professor Fenton was a decision maker. Doc. 38, at 19. However, this assertion is not supported by an allegation in the Second Amended Complaint.

termination decision.[29]  In *Cone v. Longmont United Hospital Association*, the court held that isolated or ambiguous comments, such as statements that the company "needs some new young blood" and that "long-term employees have a diminishing return," are too abstract to establish an inference of discrimination.[30]  Like the comments in *Cone*, Dean Reed's comment is ambiguous and was apparently isolated from the expulsion decision.  Thus, the Court cannot find that this stray remark supports a plausible claim of Title VI discrimination.

Turning to Associate Director Earles, Plaintiff alleges that she made several discriminatory comments implicating Plaintiff's national origin, including that "the culture here is different than in your country," and that Earles was "trying to counsel Plaintiff on how to adapt to 'American' conversations."  Plaintiff also alleges that Earles characterized her interactions with Plaintiff as "creepy and threatening."  Earles' statement regarding her interactions with Plaintiff does not implicate national origin, and it is consistent with Defendant's charges against Plaintiff for engaging in threatening behavior.  Earles' comments about differences in culture and "American" conversations implicate national origin, but they do not indicate a discriminatory animus.[31]  Additionally, Plaintiff alleges that Earles "took part in the decision to expel Plaintiff and terminate his employment," but he does not support this conclusory statement with any factual allegations.  Indeed, Plaintiff does not allege that Earles attended the May 1, 2013 expulsion meeting, that she signed the expulsion letter, or that her position as Associate Director of International Planning and Analysis otherwise qualified her to

---

[29]*See* Doc. 31 at 4 ¶ 21 (alleging that the comment occurred "[d]uring one of Plaintiff's interactions with Dean Reed").

[30]*Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994).

[31]*See Stephens v. City of Topeka, Kan.*, 33 F. Supp. 2d 947, 963 (D. Kan. 1999) (holding that three comments concerning plaintiff's accent, although they "indicate[d] recognition of his national origin," did not indicate a discriminatory animus); *MohanKumar v. Kan. State Univ.*, 60 F. Supp. 2d 1153, 1160–61 (D. Kan. 1999) (finding comments by university department head referring to graduate student's national origin on several occasions over a period of years did not "reasonably suggest hostility or ill will towards plaintiff because of her Indian origin").

take part in the decision.[32]  Accordingly, the Court finds that Plaintiff has not plausibly alleged that the expulsion decision was influenced by the decision makers' discriminatory animus.

As explained above, Plaintiff has not plausibly alleged that he was treated less favorably than similarly situated students.  Although this is a required element of a prima facie case of Title VI discrimination, Plaintiff's inability to properly plead this element is not dispositive at the motion to dismiss stage.[33]  However, it is indicative of the plausibility of Plaintiff's alleged discrimination claim.[34]  Plaintiff also supports his discrimination claim by alleging that Defendant deviated from its normal procedures, relied on false statements in making its decision, and that decision makers made discriminatory statements.  These allegations are either conclusory and thus not entitled to the assumption of truth,[35] or do not give rise to a plausible discrimination claim when assumed true.[36]  Accordingly, the Court finds that Plaintiff has not plausibly alleged a Title VI discrimination claim.

### B.   Title VI Retaliation Claim

Although Title VI does not specifically prohibit retaliation, courts generally imply a private cause of action for retaliation based on the statute's general prohibition of intentional

---

[32]In his response, Plaintiff contends that Earles merely "provided evidence to Dean Reed *in support* of the expulsion decision," and suggests that Earles' comments "were adopted by the decisionmakers." Doc. 38 at 19–20 (emphasis added).  However, Plaintiff does not allege in his Complaint that "the decisionmakers" adopted any comments by Earles, and he does not provide any context for this conclusion in his response.  Furthermore, the Tenth Circuit has explained that comments by non-decisionmakers generally do not establish a defendant's discriminatory animus. *Mitchell v. City of Wichita, Kan.*, 140 F. App'x 767, 778 (10th Cir. 2005).

[33]*See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 509–11 (2002).

[34]*See Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012); *Shay v. RWC Consulting Grp.*, No. Civ 13-0140 JB/ACT, 2014 WL 3421068, at *29 n.13 (D. N.M. June 30, 2014) (citing *EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007)) (explaining that courts should consider elements of prima facie case "[t]o the extent that [*McDonnell Douglas*] elements are established or disclaimed in the pleadings").

[35]Plaintiff's allegations that he was treated differently than similarly situated students, that Defendant deviated from standard procedures, that Defendant relied in bad faith on false statements in making its decision, and that Director Earles was a decision maker are conclusory statements that are not supported by factual context.  These allegations are thus not entitled to the assumption of truth.

[36]As explained above, the statements by Professor Fenton, Dean Reed, and Director Earles do not give rise to a discrimination claim.

11

discrimination.[37]  In the absence of direct evidence of retaliation, courts assess retaliation claims under the *McDonnell Douglas* framework described above.[38]  To establish a prima facie case of retaliation under Title VI, a plaintiff must show (1) that he engaged in protected activity under Title VI; (2) that he suffered adverse action contemporaneous with or subsequent to such activity; (3) a causal nexus between the protected activity and the adverse action; and (4) the school knew of the retaliation and did not adequately respond.[39]  Unlike discrimination claims, which apply the motivating-factor test, retaliation claims bear a heightened standard of causation.[40]  This traditional but-for causation requires that the adverse result "would not have occurred in the absence of the alleged wrongful action."[41]  Further, if "mere temporal proximity" is the only evidence of causality, the proximity must be "very close."[42]  Six weeks between the protected activity and the adverse action may be sufficient, but three months is insufficient.[43]  An action "20 months later suggests, by itself, no causality at all."[44]

Plaintiff does not allege a causal nexus, and there is no indication that the decision-makers responsible for his discharge were the same decision-makers that denied his readmission.  Thus, he supports causation only by temporal proximity.  Plaintiff filed his OCR charge on

---

[37]*Rubio v. Turner Unified Sch. Dist. No. 202*, 523 F. Supp. 2d 1242, 1253 (D. Kan. 2007) (citing *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173–74 (2005)).

[38]*Khalik*, 671 F.3d at 1192 (applying *McDonnell Douglas* framework to FMLA retaliation claim at motion to dismiss stage); *Downs v. Jostens, Inc.*, 23 F. Supp. 3d 1332, 1337 (D. Kan. 2014).

[39]*Rubio v. Turner Unified Sch. Dist. No. 202*, 523 F. Supp. 2d 1242, 1253 (D. Kan. 2007) (citing *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)).

[40]*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2526, 2533 (2013).

[41]*Id.* at 2533.

[42]*Clark Cnty. Sch. Dist. v. Breeden*, 121 S. Ct. 1508, 1511 (2001) (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)).

[43]*Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004) (citing *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)).

[44]*Clark Cnty. Sch. Dist.*, 121 S. Ct. at 1511 (citing *Hughes v. Derwinski*, 967 F.2d 1168, 1174–1175 (7th Cir. 1992) (four months between protected activity and discipline is insufficient to show causation alone)).

October 23, 2013 and applied for readmission to KSU in August 2014.  As a matter of law, ten months is too far removed to establish causation based only on temporal proximity.[45]  Therefore, the Court finds that Plaintiff has not plausibly alleged a Title VI retaliation claim.

## IV.     Conclusion

Because Plaintiff's Complaint does not plausibly allege the existence of a similarly situated student, that Defendant deviated from standard procedures, that Defendant relied in bad faith on false statements in making its decision, or that decision makers exhibited discriminatory animus, the Court grants Defendant's motion to dismiss as to Plaintiff's discrimination claim. Because Plaintiff's Complaint does not allege a causal nexus between his OCR charge and his readmission denial, the Court grants Defendant's motion to dismiss as to Plaintiff's retaliation claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Dismiss (Doc. 34) is **granted**.

**IT IS SO ORDERED.**

Dated: June 28, 2016

>                          S/ Julie A. Robinson
>                          JULIE A. ROBINSON
>                          UNITED STATES DISTRICT JUDGE

---

[45] *See Meiners*, 359 F.3d at 1231 (citing *Anderson*, 181 F.3d at 1179); *Clark Cnty. Sch. Dist.*, 121 S. Ct. at 1511.